IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRY COCHRAN,
    *Plaintiff*,

v.

DEPARTMENT OF HOMELAND
SECURITY (DHS),
FEDERAL EMERGENCY
MANAGEMENT AGENCY (FEMA)
    *Defendant*.

Civil Action No. ELH-18-202

**MEMORANDUM OPINION**

Terry Cochran, the self-represented plaintiff, has sued her former employer, the United States Department of Homeland Security, Federal Emergency Management Agency ("FEMA"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522(a). ECF 1 (the "Complaint").[1] According to Cochran, FEMA has not complied with plaintiff's FOIA request of December 4, 2017, requesting "Family & Medical Leave Act [('FMLA')] records from 1962 – present." ECF 1-1 ("FOIA Request") at 5. Plaintiff also requests costs and legal fees associated with enforcement of her FOIA request. ECF 1 at 5-6.

On April 4, 2018, FEMA moved to dismiss or, in the alternative, for summary judgment (ECF 7), supported by a memorandum of law (ECF 7-1) (collectively, the "Motion") and exhibits. ECF 7-3 - ECF 7-8. According to FEMA, by March 1, 2018, it produced "all documents

---

[1] Plaintiff has also filed two other FOIA suits against FEMA: *Cochran v. Department of Homeland Security, Federal Emergency Management Agency*, Case Nos. ELH-18-200 and ELH-18-201.

When plaintiff initially filed suit, she was pro se. *See* ECF 1. She then retained counsel, who assisted her, *inter alia*, in modifying her FOIA request. ECF 9. As of August 20, 2018, plaintiff again became self-represented. ECF 25.

responsive to [plaintiff's] request." ECF 7-1 at 1. Therefore, FEMA maintains that the Complaint is now moot and "should be dismissed," *id.*, as there is no case or controversy. *Id.* at 5.

After FEMA filed its Motion, plaintiff retained counsel. On May 6, 2018, through counsel, plaintiff refined her initial FOIA request. In particular, she requested "[a]ny and all records pertaining to her treatment by psychologist Margaret Hayward," which was probably provided by Hayward in 2016. ECF 16-2 at 4; *see also* ECF 16-2 (Affidavit of Plaintiff), ¶ 3. Plaintiff explains that she "sought treatment by Ms. Heyward [sic] due to harassment and a hostile work environment at FEMA, about which [she] filed an EEO [Equal Employment Opportunity] complaint." ECF 16-2, ¶ 3.

Plaintiff opposes the Motion (ECF 16, the "Opposition"), supported by exhibits. ECF 16-2. She "asserts that FEMA has failed to produce" documents responsive to her modified request. ECF 16 at 1 (citing ECF 16-2, ¶¶ 3-6). In her view, FEMA "failed to conduct an adequate search for all responsive documents." ECF 16-2, ¶ 3. Thus, she insists that the case is not moot. ECF 16 at 2.

FEMA filed a reply (ECF 21, the "Reply"), supported by several exhibits. ECF 22-1 to ECF 22-10. These include the Declaration of Eric Neuschaefer, FEMA's Disclosure Branch Chief, Information Management Division. ECF 21-2 (the "Neuschaefer Declaration").

FEMA contends that it "performed a reasonable search," ECF 21 at 2, and it "was not obligated to speculate regarding 'potential leads' concerning the location of the Hayward treatment records." *Id.* at 4. FEMA also maintains that plaintiff "has impermissibly attempted to expand her FOIA request after FEMA already responded . . . ." *Id.* at 5. The agency argues, *id*. at 6: "The Court lacks subject matter jurisdiction, because after FEMA conducted a reasonable search for

Ms. Cochran's FMLA records, Plaintiff has attempted to expand the scope of her request through the present litigation, without appealing the Agency's final response administratively."

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall construe FEMA's Motion (ECF 7) as one for summary judgment, and I shall grant it.

## I. Factual Background

Plaintiff was previously employed as the "Chief FOIA Officer for FEMA's Disclosure Branch." ECF 16-2, ¶ 2. Her "area of expertise" was in the FOIA/Privacy Act "arena." *Id.*

Plaintiff electronically submitted a seemingly broad FOIA request to FEMA on December 4, 2017, seeking all of her FMLA "records from 1962 – present." ECF 1 at 5; ECF 1-1 at 5. On December 4, 2017, FOIA Program Specialist Paula Presley sent a letter to plaintiff (ECF 1-2), acknowledging receipt of her request and assigning a FEMA reference number, 2018-FEFO-00259. ECF 1 at 5; ECF 1-1 at 2. FEMA indicated that it is the agency's "goal to respond within 20 business days of receipt of [a] request." ECF 1-2. However, FEMA "invoke[d] a 10-day extension" as to plaintiff's request, pursuant to 5 U.S.C. § 552(a)(6)(B), because her request would "require a thorough and wide-ranging search[.]" ECF 1-2 at 2.

Accordingly, the agency's response was due on or before January 18, 2018. *Id.* Plaintiff filed suit on January 22, 2018, alleging that FEMA failed to provide a response to her FOIA request. ECF 1 at 5.

Neuschaefer is the Disclosure Branch Chief, Information Management Division, Office of the Chief Administrative Officer ("OCAO") of FEMA. ECF 21-2, ¶ 1. He supervises FOIA requests for FEMA. ECF 21-2, ¶ 3.

In his Declaration, Neuschaefer outlines the FOIA process utilized generally by FEMA, which he claims was followed in this matter. ECF 21-2, ¶¶ 4-14. Neuschaefer also describes the places that were searched in response to plaintiff's FOIA request, the methods used to conduct the searches, and the search terms. ECF 21-2. He avers that FEMA "performed a reasonable search for documents responsive" to plaintiff's "original and amended FOIA request" and that the agency has complied with plaintiff's FOIA request. *Id.* ¶ 15.

The Office of the Chief Component Human Capital Officer ("OCCHCO") is FEMA's human resources division. ECF 21-2, ¶ 17. Neuschaefer recounts that OCCHCO was initially "tasked" with responsibility to search for the records responsive to plaintiff's request, because it is the Program Office thought to be "most likely to have records pertaining to FMLA" for plaintiff. ECF 21-2, ¶ 17; ECF 22-3. No records were located. ECF 21-2, ¶ 18; ECF 22-4.

OCCHCO suggested a search of payroll records. ECF 21-2, ¶ 8. The Payroll Branch provided some time and attendance records. ECF 21-2, ¶ 19; ECF 22-5. But, it was unable to locate responsive medical records. ECF 21-2, ¶ 20.

The Disclosure Branch contacted Eric Leckey, the Deputy Chief Administrative Officer in the Office of the Chief Administrative Officer ("OCAO"), who was also plaintiff's former supervisor, and he was directed to search for responsive records. ECF 21-2, ¶ 21; ECF 22-7. Leckey "searched electronic files on SharePoint, his desktop, and his hard drive." ECF 21-2, ¶ 21. He also searched the OCAO "shared drive, which is a repository for documents used throughout the OCAO." *Id.* And, he "manually searched his physical file cabinet . . . ." *Id.* In addition, the Disclosure Branch searched the Records Management "shared drive, which is a database that contains the files used by the Records Management teams . . . ." *Id.*; ECF 21-7.

Further, Robyne Jackson, the OCCHCO FMLA Coordinator, was directed to search for responsive records. ECF 21-2, ¶¶ 20, 22; *see* ECF 22-8. She located duplicates of records already obtained by Leckey. ECF 21-2, ¶ 22.

On March 1, 2018, FEMA produced 96 pages of responsive records. ECF 7-5 ("March 1, 2018 Final Response Letter"); ECF 22-9 (same); ECF 21-2, ¶ 25. The records were released in their entirety, with "no redactions or exemptions." ECF 21-2, ¶ 25.

Upon receipt, plaintiff notified FEMA that she was unable to access the documents using the password provided by FEMA. *Id.* ¶ 23. Therefore, on March 8, 2018, FEMA mailed a CD to plaintiff containing the responsive records. *Id.*

On May 6, 2018, after FEMA had filed the Motion, plaintiff, through counsel, sent an email (ECF 16-2 at 4) advising FEMA that it had failed to produce "[a]ny and all records pertaining to [plaintiff] treatment by psychologist Margaret Hayward." Counsel noted: "I understand the treatment took place in 2016, but I am not certain." *Id.*; *see also* ECF 16-2, ¶ 3. Upon review of the email, the Disclosure Branch "determined that all appropriate offices had been tasked in the original search for responsive records, which would have included treatment records." ECF 21-2, ¶ 27. Further, the DB "determined that if the agency had records pertaining to Ms. Cochran's treatment" by Hayward, "they would have been provided by" Jackson and/or Leckey. *Id*.

Additional facts are included in the Discussion.

## II. Standard of Review

FEMA has moved to dismiss or, alternatively, for summary judgment. ECF 15. The agency contends, *inter alia*, that the Court should dismiss plaintiff's claim for lack of subject matter jurisdiction, "because after FEMA conducted a reasonable search for Ms. Cochran's FMLA records, Plaintiff has attempted to expand the scope of her request through the present litigation,

without appealing the Agency's final response administratively." ECF 21 at 6 (citing *Pollack v. U.S. Dep't of Justice*, HAR-89-2569, 1993 WL 293692, at *3 (D. Md. July 26, 1993) (determining that the court lacked subject matter jurisdiction over FOIA requests that were submitted to the agency after plaintiff filed suit).

However, plaintiff disputes that she expanded her initial request. ECF 16 at 2. Rather, she maintains, *id*.: "The Court has subject matter jurisdiction because there is an existing case or controversy before the Court due to Cochran's evidence that FEMA has failed to produce all responsive documents."

In plaintiff's original request, she sought her FMLA records from 1962 to the present. Thereafter, counsel narrowed the request considerably, seeking records pertaining to plaintiff's treatment by psychologist Margaret Hayward, apparently rendered in 2016 in connection with a workplace harassment claim. ECF 16-2 at 4.

I agree with plaintiff that the email did not expand the initial FOIA request. Rather, counsel narrowed the request. Notably, however, the records identified by counsel would fall within the records originally requested by plaintiff.

Therefore, the issues in this case are whether FEMA conducted an appropriate search, and whether it produced the information plaintiff requested. Given those issues, I will address the Motion under Fed. R. Civ. P. 56.

Fed. R. Civ. P. 56(a) provides that summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving

party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). However, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law."

*Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

The Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard[]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same). Nevertheless, a plaintiff must still present a genuine dispute of material fact to survive summary judgment. *See Bouchat*, 346 F.3d at 522.

### III. Discussion

#### A.

Plaintiff maintains that FEMA has "failed to produce all response documents to her FOIA request." ECF 16 at 2. Specifically, she "asserts that FEMA has failed to produce 'any and all records pertaining to her treatment by psychologist Margaret Hayward.'" *Id*. at 1 (citing ECF 16-2, ¶¶ 3-6). FEMA contends that "it released all of the records that it collected after conducting a reasonable search for responsive records." ECF 21 at 2.

"The Freedom of Information Act was enacted to facilitate public access to Government documents," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted), and to vindicate the public's right to know "what their government is up to." *U.S. Dep't of Justice v Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (quotation marks omitted); *see also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F. 3d. 1082, 1087-88 (D.C. Cir. 2014); *Havemann v. Colvin*, 537 Fed. App'x 142, 146 (4th Cir. 2013) (per curiam); *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 193 (2d Cir. 2012); *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 694 (9th Cir. 2012); *Elliott v. U.S. Dep't of Agric.*, PJM-17-995, 2018 WL 3382907, at *3 (D. Md. July 11, 2018). Consistent with this objective, FOIA requires that "each [federal] agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any) and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

FOIA reflects "'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Dept. of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (citation omitted); *see United States Dept. of Defense v. Fed. Labor Rel. Auth.*, 510 U.S. 487, 494 (1994). Thus, the statute does not authorize "unfettered access to agency records."

*Havemann*, 537 Fed. App'x at 146. Indeed, the "public's right to information [is] balanced against other competing interests. *Id.*

An agency responding to a FOIA request must conduct a search "'reasonably calculated to uncover all relevant documents'" and, if challenged, must demonstrate "'beyond material doubt'" that the search was reasonable. *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982); *accord Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 254 (1st Cir. 2013) *cert. denied*, 571 U.S. 1146 (2014); *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 987 (9th Cir. 2009); *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007).

Notably, "[t]he burden is on the government to demonstrate that it has thoroughly searched for the requested documents where they might reasonably be found." *Krikorian v. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993); *accord Moffat*, 716 F.3d at 254. However, the agency is not obligated to look beyond the four corners of the request or otherwise speculate about potential leads; rather, "[t]he adequacy of an agency's search is measured by a standard of reasonableness." *McGehee v. CIA*, 697 F.2d 1095, 1100-01 (D.C. Cir. 1983); *see Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007); *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996); *Goldner v. Soc. Sec. Admin*, 293 F. Supp. 3d 540, 545 (D. Md. 2017). "'The fact that there may *possibly* be additional documents . . . is not relevant to the question of whether defendant conducted an adequate search for the documents.'" *Goldner*, 293 F. Supp. 3d at 545 (quoting *Hornbostel v. U.S. Dep't of Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003) (ellipsis and emphasis added in *Goldner*).

The government may rely upon affidavits to show that it has conducted a reasonable search, as long as the affidavits are "'relatively detailed and nonconclusory and . . . submitted in good faith.'" *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1979) (quoting *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974)); *accord Karantsalis v. U.S. Dep't of Justice*, 635 F.3d 497, 500 (11th Cir. 2011); *Elliott*, 596 F.3d at 852; *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008). The affidavit "must be reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search." *Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1246-47 (4th Cir. 1994) (internal quotation marks and citations omitted); *accord Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009); *Lahr*, 569 F.3d at 986.

For example, the U.S. District Court for District of Columbia found a search by officials at the Shenandoah National Park ("SNP") to be reasonable when defendants submitted an affidavit that advised the court as follows:

> SNP employees searched agency records, both manually and by automated means. Specifically, defendant notified relevant employees of the requests through e-mail, discretionarily reopened plaintiff's first FOIA request though it had technically been closed, in order to sort out some perceived confusion, and requested that the [] project manager review his files in order to identify any documents covered by the requests. Both hard copy files and e-mails retrieved from the search were further reviewed by the SNP employees responsible for FOIA matters at SNP.

*Hornbostel v. U.S. Dep't of Interior*, 305 F. Supp. 2d 21, 26 (D.D.C. 2003) (internal quotation marks omitted), *aff'd*, No. 03-5257, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004) (per curiam).

In contrast, the D.C. Circuit found an affidavit submitted by an FBI Special Agent inadequate when it merely stated, *Weisberg*, 627 F.2d at 370: "I have conducted a review of FBI files which would contain information that Mr. Weisberg has requested. . . . The FBI files to the

best of my knowledge do not include any information requested by Mr. Weisberg other than the information made available to him." The court explained, *id.*: "[T]he affidavit gives no detail as to the scope of the examination and thus is insufficient as a matter of law to establish its completeness."

If the agency shows that its search was reasonable, "the burden shifts to the requester to show that the search was not in fact in good faith" or that the agency is otherwise acting in bad faith (*e.g.*, by denying the existence of documents it in fact possesses). *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D. D.C. 1998); *see Moffatt*, 716 F.3d at 254; *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 341 (6th Cir. 2011); *Lee v. U.S. Attorney for S. Dist. of Fla.*, 289 F. App'x 377, 380 (11th Cir. 2008). "If the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

**B.**

To support FEMA's claim of compliance with the FOIA request, FEMA relies, *inter alia*, on the Declaration of Eric Neuschaefer, the Disclosure Branch Chief, Information Management Division, in the OCAO. *See* ECF 21-2. As indicated, in his Declaration, Neuschaefer outlined FEMA's FOIA process, in general, and in detail. *Id*. ¶¶ 4-14. And, he represents that the process was followed in connection with plaintiff's initial FOIA request of December 4, 2017, as refined by her attorney on May 6, 2018. *Id*. ¶¶ 15-25.

Neuschaefer avers, in relevant part, ECF 21-2:

16. FEMA received the FOIA request for Ms. Cochran's "Family and Medical Leave Act [("FEMA")] records" from 1962 to the date of the request on December 4, 2017, and sent Plaintiff an acknowledgement letter on the same day. (Exhibits 1 and 2).

17. On December 4, 2017, the Office of the Chief Component Human Capital Officer (OCCHCO) was tasked to search for the responsive records. OCCHCO

-- 12 --

serves as FEMA's human resource division, and is the Program Office most likely to have records pertaining to FMLA for Ms. Cochran.

18. After several follow up requests from the DB, on January 24, 2018, OCCHCO responded, stating that searches of its Talent Acquisition Division (TAD) and Human Resources Information System (HRIS) produced no records. The TAD and HRIS branches of OCCHCO recommended searching FEMA's payroll timekeeping system, WebTA [sic] for the records.

19. On January 26, 2018, the Payroll Branch of OCCHCO provided to the DB 333 pages of web-based Time & Attendance (webTA) records, of which 82 pages were responsive documents. DHS-FEMA utilizes webTA to collect an employee's hours worked and leave used and is searchable by employee name.

20. On January 26, 2018, the Payroll Branch confirmed that no responsive medical records exist at OCCHCO Payroll Branch. (Exhibit 6)

21. The DB tasked Ms. Cochran's former supervisor, Eric Leckey, Deputy Chief Administrative Officer of OCAO, to search for records in response to the request. On February 22, 2018, Mr. Leckey provided the DB with 14 pages of records, of which 13 pages were responsive documents. Mr. Leckey electronically searched his electronic files on SharePoint, his desktop, and his hard drive. He also electronically searched his electronic files on SharePoint, his desktop, and his hard drive. He also electronically searched the OCAO shared drive, which is a repository for documents used throughout the OCAO. In both instances, he used the search terms "Cochran, Terry" and "FMLA." Mr. Leckey manually searched his physical file cabinet in his office for responsive records under "Cochran, Terry" and "FMLA." The DB also searched the Records Management shared drive, which is a database that contains the files used by the Records Management teams, including the DB and all of Mr. Leckey's other supervisees.

22. The DB also tasked Robyne Jackson, the OCCHCO FMLA Coordinator, with searching for records responsive to Ms. Cochran's request. On February 22, 2018, Ms. Jackson[] provided to the DB 13 pages of FMLA records, of which 13 pages were duplicates of records already provided by Mr. Leckey. (Exhibit 8). . . .

24. All documents were processed with line by line review.

25. After the documents were reviewed and it was determined that there were no redactions or exemptions, the DB provided all 96 pages of responsive records to the Plaintiff on March 1, 2018. (Exhibit 9)

After review of plaintiff's modified request, "the DB determined that all appropriate offices had been tasked in the original search for responsive records, which would have included treatment

records." ECF 21-2, ¶ 27. Further, the DB "determined that if the agency had records pertaining to Ms. Cochran's treatment by" Hayward, "they would have been provided by" Jackson and/or Leckey. *Id.*

Neuschaefer's Declaration, coupled with the FEMA exhibits, establish FEMA's compliance with the FOIA in regard to the adequacy of the search itself. The exhibits describe the searches, identify search terms, the specific locations that were searched, and indicate that all files likely to contain responsive materials were searched. *See Ethyl Corp.*, 25 F.3d at 1246-47 ("In judging the adequacy of an agency search for documents the relevant question is not whether every single potentially responsive document has been unearthed . . . but whether the agency has 'demonstrated that it has conducted a "search reasonably calculated to uncover all relevant documents."'") (citations omitted).

Accordingly, the burden shifts to plaintiff to show that the agency acted in bad faith or that the search was deficient. *See Greenberg*, 10 F. Supp. 2d at 13. Plaintiff contends: "FEMA should have access to these records pertaining to my treatment by Ms. Heyward [sic] because she had provided me my records and I had then submitted my records to FEMA." ECF 16-2, ¶ 6. Plaintiff further avers that she submitted the records to FEMA in connection with her EEO complaint alleging harassment and hostile work environment. *Id.* ¶ 3.

However, as defendant points out, neither the initial FOIA request (ECF 1-1 at 5) nor the modified request (ECF 16-2 at 4) references the EEO complaint. *See Morley*, 508 F.3d at 1121 ("[M]ere reference to other files does not establish the existence of documents that are relevant to appellant's FOIA request. If that were the case, an agency responding to FOIA requests might be forced to examine virtually every document in its files, following an interminable trail of cross-referenced documents like a chain letter winding its way through the mail. [] FOIA clearly does

not impose this burden upon federal agencies. . . ." (quoting *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994)) (alterations in *Morley*)).

In light of the FOIA procedure and production outlined in the Neuschaefer Declaration, as supported by FEMA's exhibits, the record amply demonstrates that FEMA has met its FOIA obligations here. *See Greenberg*, *supra*, 10 F. Supp. 2d at 13.

### IV. Conclusion

In sum, FEMA has satisfied its burden to "demonstrate that it has thoroughly searched for the requested documents where they might reasonably be found." *Krikorian, supra*, 984 F.2d at 468. And, plaintiff has "made no showing of [FEMA] bad faith sufficient to impugn [the Declaration], which on its face suffices to demonstrate that [FEMA's] search for responsive documents was complete." *Goland, supra*, 607 F.2d at 335.

To the extent plaintiff requests fees and costs associated with filing this action, I shall deny such a request. FOIA provides: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has *substantially prevailed*." 5 U.S.C. § 552(a)(4)(E)(i) (emphasis added). However, plaintiff has failed to show that she has "substantially prevailed" on her FOIA claim. *See Reinbold v. Evers*, 187 F.3d 348, 363 (4th Cir. 1999).

For these reasons, I shall grant summary judgment to FEMA. An Order follows, consistent with this Memorandum Opinion.

Date: March 11, 2019 /s/
Ellen Lipton Hollander
United States District Judge